## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | | |
|---|---|---|
| _____ | ) | |
| Carolyn C. Jones | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-251 |
| v. | ) | |
| | ) | |
| International Business Machines Corp. | ) | |
| ("IBM") | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Carolyn C. Jones ("Plaintiff" or "Ms. Jones"), through undersigned counsel, files this Original Complaint against Defendant International Business Machines Corporation ("IBM" or "Defendant"), pursuant to 29 U.S.C. §1132(a), and alleges as follows:

### I.    INTRODUCTION

1.    Plaintiff brings this lawsuit against Defendant to recover unpaid retirement and pension benefits promised to her by IBM's Office of the Plan Administration (the "Plan Administrator").

2.    Prior to retiring from IBM, Jones received numerous written and oral assurances from the Plan Administrator that the value of her lump sum pension benefit from IBM's Personal Pension Plan (the "Plan") was approximately $333,000.00. Jones, who had no independent means of evaluating her pension benefit, relied upon those representations when deciding to permanently and irrevocably retire from IBM in 2018.

3.      Plaintiff made retirement planning decisions for nearly two years leading up to her eventual retirement, largely relying on what she reasonably believed to be the value of her pension benefits. Days after she retired, with no ability to reverse her retirement plans, Jones learned Defendant had miscalculated the lump sum benefit owed to her by nearly $300,000.00. That is to say, Defendant pulled the rug out from underneath Plaintiff when it sent her a lump sum pension check of only $53,477.71 – without explanation or apology. But for Defendant's misrepresentations, Plaintiff would not have retired early, and instead continued work and grow her retirement benefits for years.

4.      Facing the prospect of a difficult retirement caused by Defendant's action, Ms. Jones filed a claim with the Plan Administrator pursuant to the Plan's governing documents, seeking payment of the $331,250.95 lump sum benefit repeatedly promised to her by Defendant. Defendant denied Ms. Jones' claim despite its obvious merit.[1] Thereafter, and again pursuant to the Plan's governing documents, Ms. Jones appealed Defendant's denial of her claim. Defendant, however, once again denied Ms. Jones' claim.[2]

5.      Thus, after twice being denied the pension benefits to which she is entitled, Plaintiff is left with no recourse but to file the instant lawsuit.

## II.      JURISDICTION AND VENUE

6.      This court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 because this action involves a federal question under 29 U.S.C. §1001 et seq.

---

[1] True and correct copies of Ms. Jones' August 3, 2018 Claim Letter and IBM Plan Administrator's September 4, 2018 letter denying Ms. Jones claim are attached hereto as **Exhibits A** and **B**, respectively.
[2] True and correct copies of Ms. Jones' October 31, 2018 Appeal Letter and IBM Plan Administrator's January 14, 2019 letter denying Ms. Jones Appeal are attached hereto as **Exhibits C** and **D**, respectively.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this claim occurred in this District and Division, and the Defendant is a resident of this District pursuant to 28 U.S.C. §1391(c)(2).

### III.      THE PARTIES

8.      Carolyn Jones is an individual currently residing at 10606 Sans Souci Place, Austin, Texas 78759. In total, Ms. Jones was employed by the Defendant for approximately 34 years.

9.      IBM is an American multinational information technology company headquartered in Armonk, New York, with operations across the world. IBM may be served with process through its Registered Agent, CT Corp. System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

### IV.      FACTUAL BACKGROUND

10.      Plaintiff was initially employed by Defendant from June 1980 to December 1999, where she worked as a software engineer.

11.      In January 2000, Ms. Jones left IBM to work for a local start-up technology company. When that start-up failed in 2003, Ms. Jones returned to IBM.

12.      Upon her first separation from Defendant in December of 1999, Ms. Jones took a lump sum payout of her accrued pension benefits (approximately $89,000).

13.      Upon Plaintiff's reemployment with Defendant in 2003, she again became a participant in Defendant's pension plan and began accruing pension and settlement benefits.

14.      Prior to Plaintiff's retirement in 2018, the Plan Administrator provided Plaintiff with a Personal Pension Plan (the "Plan"), which illustrated the pension and retirement benefits for which Plaintiff was eligible as a result of her employment with Defendant.

### A. Defendant Begins Considering Retirement

15.     In the summer of 2016, Plaintiff received two IBM pension reports from IBM's Employee Services Center Office of the Plan Administrator ("Plan Administrator") which administers the Plan. The Plan Administrator, among other things, manages and oversees retirement and pension benefits for Defendant's employees.

16.     The first report stated that, as of 2016, Ms. Jones' lump sum pension distribution would be $274,014.00 at retirement, and those amounts were subject to upward adjustments over time.[3]

17.     The second report, issued by the Plan Administrator approximately two (2) months later, stated the lump sum pension distribution would be $278,068 at retirement, again subject to upward adjustments and presumably larger than reported two months earlier due to accrued growth over that period.[4]

18.     Based on those reports, verbal confirmation by IBM of the lump sum amounts contained in the report, and her own independent financial planning, Plaintiff began seriously considering when to retire permanently from IBM.

19.     In order to evaluate whether and when to retire, Plaintiff communicated orally and in writing with the Plan Administrator to learn about the early retirement process at IBM and the precise value of her retirement benefits earned as a participant in the Plan.

---

[3] *See* July 23, 2016 IBM pension report for Ms. Jones, attached as **Exhibit E**.
[4] *See* September 10, 2016 IBM pension report for Ms. Jones, attached as **Exhibit F.**

20.     Additionally, over the course of two full calendar years, Plaintiff had several meetings with Fidelity Net Benefits advisor Michael Helal ("Helal") to investigate and learn more about her retirement options.[5]

21.     At each meeting, Plaintiff was provided with information regarding her retirement options, including the value of her pension benefits, the IBM "Transition to Retirement" program (which allows early retirees to work part-time for a year while they train their permanent replacement), and the various ways in which she could financially plan for her retirement, for which, Plaintiff's choice to take a lump sum distribution was a critical consideration.

22.     The information provided by Defendant and Helal was critical to Ms. Jones' financial planning decisions for her retirement years, and a critical factor in the decision as to whether she should even retire at all.

23.     These conversations took into account Plaintiff's complete financial picture, such that Defendant was aware at all times of Plaintiff's dependence on her pension for retirement. While Helal was Plaintiff's primary contact when it came to planning her retirement, Plaintiff also communicated directly with Defendant's Retirement Services personnel, often with Helal participating in those communications.

**B. Plaintiff Decides to Retire**

24.     In May 2017, Plaintiff became eligible to retire through Defendant's "Transition to Retirement" early retirement program and received an invitation to do so. Based upon the information she had previously been provided by Defendant regarding the value of her pension benefits, Plaintiff accepted Defendant's invitation and submitted an application to the program.

---

[5] IBM partners with Fidelity Net Benefits to assist its employees with benefits and retirement counseling. In that capacity, Ms. Jones met with Helal on September 8, 2016, December 5, 2016, January 19, 2017, March 1, 2017, and July 12, 2017.

25.    In June 2017, Plaintiff was approved for retirement by Defendant, and her official retirement date was set for June 30, 2018. Beginning in July 2017, Plaintiff began working part time and training the individuals who would take over her job at IBM.

26.    On January 29, 2018, as Plaintiff neared her effective retirement date, the Plan Administrator again provided Ms. Jones with a detailed Pension Report (the "Report") which represented to Plaintiff the value of her pension benefits as a participant in the Plan.[6] Notably, the fourth page of the Report represented the value of Plaintiff's benefits when taken as a single lump sum distribution to be $331,250.95. The Plan Administrator subsequently reconfirmed this written representation to Plaintiff during several communications.

27.    The Report itself contains numerous calculations based on various ***pension payout options*** Plaintiff was free to select prior to her retirement.

28.    For example, the Report calculates the value of "split plans," which provide for the receipt of a partial lump sum distribution along with additional annuitized monthly benefits until Plaintiff reached age 80. The Report also contained calculations of benefits based upon a split of Plaintiff's benefits with her spouse, such that he could continue to receive the monthly annuitized payment should Plaintiff pre-decease him. All of these, as well as the single "lump sum" distribution option, appear in the Report.

29.    In addition to the calculations of benefits owed to Plaintiff, the Report also contains a single line on page 3 stating the "***current cash balance account value***" as $53,477.71.

30.    Importantly, that amount is not found in any other section of the Report, nor is it represented as either a "***benefit***," "***payout***," or "***distribution***"– terms associated throughout the Report with the actual amounts Plaintiff was entitled to receive as a participant in the Plan.

---

[6] A true and correct copy of the January 29, 2018 IBM Pension Report is attached as **Exhibit G.**

31.     Moreover, Plaintiff spoke directly with Defendant's Employee Service Center following the receipt of the Report, at which time she was told her "lump sum payout" was $331,250.95 – confirming the amount of the lump sum distribution contained in the Report. This was consistent with Ms. Jones and Helal's 2017communications with the Employee Service Center in 2017, when she had also confirmed the value of her pension benefits.[7]

## C. Ms. Jones Retires

32.     Plaintiff, having made her financial plans, officially and irrevocably retired from IBM on June 30, 2018. Those plans were based in no small part upon Defendant's representations regarding the value of her lump sum pension benefits.

33.     Incredibly, days later, Plaintiff was sent a "final calculation" letter which stated she would receive a lump sum distribution from the Plan of $53,477.71.[8]

34.     Shocked and dismayed, Plaintiff immediately contacted the Plan Administrator to discover how such a significant and extraordinary result could have occurred. Despite her inquiries, no clear explanation was forthcoming.

35.     On August 3, 2018, pursuant to the Plan's governing documents, Plaintiff timely filed a claim with the Plan Administrator detailing the numerous written and oral communications regarding the benefits owed to her under the Plan and the Plan Administrator's misrepresentations to her that the lump sum distribution of her pension benefits would be no less than $331,250.95.[9]

---

[7] In 2017, Plaintiff received two reports in which the value of the lump sum distribution was reported to be approximately $275,000.00, which presumably grew to $331,250.95 due to the additional growth over the year. *See supra* note 5.

[8] While dated July 4, 2018, the "final calculation" letter was not sent to Ms. Jones until July 26, 2018 and was received several days later.

[9] See **Exhibit A.**

36.     On September 4, 2018, Plaintiff received the Plan Administrator's denial of her claim for the promised lump sum distribution of $331,250.95, asserting the $53,477.71 payment was in fact the correct amount owed to her.[10]

37.     Thereafter, and again pursuant to the Plan's governing documents, on October 31, 2018, Plaintiff appealed the Plan Administrator's denial of her claim.[11]

38.     On January 14, 2019, Defendant denied Ms. Jones' appeal, maintaining its position the Plan would not pay the promised $331,250.95, despite Defendant's obvious misrepresentations and Ms. Jones' reliance on the those misrepresentations when deciding to accept Defendant's invitation to retire early.[12]

## V.     CAUSE OF ACTION – ERISA ESTOPPEL

39.     Plaintiff brings this claim pursuant to ERISA's civil enforcement provisions.[13]

40.     Specifically, Claimant brings her claim for ERISA estoppel pursuant to 28 U.S.C. §1132(a)(3)(B)(i), which requires Plaintiff demonstrate traditional estoppel elements as well three additional elements, to wit: (1) *written* misrepresentations; (2) plan provisions which do not allow for individual calculation of the pension benefits; and (3) extraordinary circumstances which strongly favors the application of estoppel.[14]

(a)     Misrepresentation of a Material Fact by the Plan Administrator

---

[10] *See* **Exhibit B**.
[11] *See* **Exhibit C**.
[12] *See* **Exhibit D**.
[13] 29 U.S.C. §1132(a).
[14] The traditional elements of estoppel are: (a) misrepresentation of a material fact; (b) an awareness by the person making the misrepresentation that the representation is false or inaccurate; (c) and intention the representation be relied upon; and (d) justifiable and detrimental reliance upon the misrepresentation.

41.    The Plan Administrator's representation to Plaintiff, made in writing on numerous occasion, that she would receive a lump sum distribution of pension benefits in the amount of $331,250.95 was a misrepresentation of a material fact.[15]

(b)    The Plan Administrator was Aware of the Actual Lump Sum Benefit

42.    Defendant's miscalculation of Plaintiff's benefit was so significant as to constitute gross negligence and amounts to constructive fraud.

43.    Specifically, Defendant's miscalculation of Plaintiff's benefits were so significant that they resulted in a reduction of Plaintiff's promised benefit by more than 80 percent.

(c)    The Plan Administrator's Representation was Intended to Be Acted Upon

44.    Defendant clearly intended Plaintiff to act upon Defendant's misrepresentations regarding Plaintiff's retirement benefits.

45.    Indeed, Plaintiff received such misrepresentations from Defendant in connection with her determination as to (a) whether she should retire, and later (b) whether she should enter into Defendant's early retirement program, known as the "transition to retirement" program," such that Defendant was clearly aware and intended Plaintiff to rely on the information contained in its reports when making her decision to retire.

(d)    Ms. Jones Justifiably and Detrimentally Relied on the Misrepresentations

46.    Plaintiff justifiably relied upon the misrepresentations made to her, given (1) she had no independent means to calculate her pension benefits, and (2) she made diligent inquiry upon receipt of each written report to confirm the representations made to her regarding the value of her pension benefits.

---

[15] Notably, the Plan Administrator's September 4, 2018 letter denying Ms. Jones' claim outright admits it misrepresented the value of Ms. Jones' pension benefits. *See* **Exhibit B**, at pp.1-2. This admission is reiterated in IBM's Denial of Carolyn Jones Appeal. *See* **Exhibit D**.

47.     As a result of Plaintiff's reliance upon the misrepresentations made to her by Defendant regarding the value of her pension benefits, Ms. Jones made the decision to retire from Defendant earlier than she would otherwise have done.

48.     And as a result of her reliance upon Defendant's misrepresentations, Ms. Jones was denied the opportunity to continue to grow her pension and 401K benefits, or even to continue to earn her salary – which was substantial. Instead, Ms. Jones is now left with no choice but to deplete her savings and consider the sale of her home in order to merely meet her financial obligations.

(e)     The Additional ERISA Estoppel Elements

49.     Defendant's misrepresentations were clearly written misrepresentations, as they were provided to Plaintiff in the form of a written benefits report. Moreover, Ms. Jones had no means of independently calculating her retirement benefits. Indeed, the IBM Pension calculations are so opaque, IBM provides numerous reports and resources to assist its employees in understanding their benefits and the value of those benefits. And it was those very resources which misrepresented the value of Plaintiff's benefits.

50.     Finally, the results here were extraordinary. As a result of Defendant's misrepresentations, Ms. Jones is now irrevocably retired from IBM—with only 16% of the pension benefits she was promised by Defendant.

**VI.     CONCLUSION**

51.     As a matter of law and equity, Plaintiff is entitled to the $331,295.91 lump sum distribution that was promised to her. The written and oral misrepresentations by Defendant, and the actions reasonably taken by Ms. Jones based upon those misrepresentations call for the application of ERISA estoppel to her claim. Accordingly, Defendant should pay the remainder of the $331,295.91 not already distributed to Plaintiff.

## VII.   JURY DEMAND

52.   Plaintiff demands a trial by jury.

## VIII.   RELIEF SOUGHT

53.   WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

    a.   For an Order directing Defendant to pay Plaintiff $277,773.24 ($331,250.95, less the $53,477.71 lump sum benefit paid to Plaintiff), plus pre and post judgment interest thereon;

    b.   For an Order awarding Plaintiff the costs of this action;

    c.   For an Order awarding Plaintiff its attorneys' fees; and

    d.   For an Order granting such other and further relief as this Court deems just and necessary.

Respectfully submitted,

DUGGINS WREN MANN & ROMERO, LLP


By:   /s/ Robert E. Linkin
      Robert E. Linkin
      State Bar No. 00795773
      rlinkin@dwmrlaw.com
      Chris Camillone
      State Bar No. 24105571
      ccamillone@dwmrlaw.com
      600 Congress Avenue, Ste. 1900
      P. O. Box 1149
      Austin, Texas 78767-1149
      512-744-9300 tel.
      512-744-9399 fax.

ATTORNEYS FOR PLAINTIFF